## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| The Noco Company, Inc., | Case No. 1:20cv1170 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| Zhejiang Quingyou Electronic Commerce Co., Ltd., et al., | **MEMORANDUM OPINION AND ORDER** |
| **Defendants** | |

Currently pending is Plaintiff The Noco Company, Inc.'s Motion for Leave to Serve Defendants through Alternative Means.  (Doc. No. 12.)  For the following reasons, Plaintiff's Motion is GRANTED IN PART and DENIED WITTHOUT PREJUDICE IN PART, as follows.

**I.      Background**

On May 28, 2020, Plaintiff The Noco Company, Inc. ("Plaintiff" or "Noco") filed a Complaint for Patent Infringement against Defendant Zhejiang Qingyou Electronic Commerce Co., Ltd ("Qingyou").  (Doc. No. 1.)  Several months later, on September 16, 2020, Noco filed a First Amended Complaint for Patent Infringement, in which it added Shenzhen Aojie Technology Co., Ltd ("Aojie") and Shenzhen Shi Shenai Dianzishangwu Youxian Gongsi ("Shenai") as Defendants. (Doc. No. 8.)  According to Plaintiff, Defendants Qingyou, Aojie, and Shenai are all business entities headquartered in China that do business under the name AUTOWN.  (*Id*. at ¶¶ 3-5.)

Noco designs and manufactures premium consumer battery chargers, jump starters, and other portable power devices used primarily in the automotive and marine industries.  (*Id*. at ¶ 12.)  In July 2014, Noco filed a utility patent application covering its Genius Boost lithium jump starter, which was granted and issued in April 2015 as U.S. Patent No. 9,007,015 (the "'015 Patent.")  (*Id*. at ¶ 19.)

In the First Amended Complaint, Noco alleges that "Defendants infringe the '015 Patent in violation of 35 U.S.C. § 271 by making, using, offering to sell, and/or importing at least the following models of compact lithium jump starter sold under the brand name AUTOWN that have safety features claimed in the '015 Patent:  RP-PI-03 and RP-PI-04."  (*Id*. at ¶ 23.)

Noco alleges that Defendants sell their products to consumers in the United States online, through Amazon.com, under the names "AUTOWN Direct" and "SHENAIUS."  (*Id*. at ¶¶ 7-8.)  *See also* Declaration of Aaron Williams (Doc. No. 13) at ¶¶ 3, 5.)  Prior to initiating the instant lawsuit, Noco, through counsel, attempted to ascertain physical addresses for Defendants Qingyou, Aojie, and Shenai by conducting a "comprehensive and exhaustive search" of product instruction manuals, Amazon.com, Facebook, Google and a credit management website called Mira Inform.  (Doc. No. 13 at ¶ 2.)  Noco discovered that Defendants Shenai and Aojie list their business names and physical addresses on their Amazon pages.  (*Id*. at ¶¶ 4, 6.)  *See also* Doc. Nos. 13-1, 13-2.  In addition, Noco was able to obtain a different physical address for Defendant Aojie from a business report generated from credit management company, Mira Inform.  (Doc. No. 13 at ¶ 9; Doc. No. 13-3.)  Finally, Noco obtained a physical address for Defendant Qingyou in an instruction manual for an infringing product sold by that defendant.  (Doc. No. 13 at ¶ 7.)

In all, Noco obtained a total of four physical addresses for Defendants Qingyou, Aojie, and Shenai.  In October 2020, Noco attempted to create Fed Ex shipping labels for these addresses but had to alter some of them "in order to make them acceptable for Fed Ex's shipping labels."  (*Id*. at ¶ 11.)  Through FedEx, Noco mailed Waiver of Service packages to Defendants at the four physical addresses noted above.  The packages sent to Defendants Shenai and Aojie at the physical addresses listed on their respective Amazon.com pages were not delivered due to "Incorrect Address[es]."  (*Id*.

2

at ¶¶ 12, 14.)  The package sent to Defendant Aojie at the physical address obtained through Mira Inform was successfully delivered; however, Noco states that "it was received by the building's mailroom and therefore it is unclear whether it ultimately reached Defendant Aojie."  (Doc. No. 12 at p. 4.)  *See also* Doc. No. 13 at ¶ 13.  The package sent to Defendant Qingyou at the physical address listed in the product instruction manual was returned because it was "refused by recipient."  (Doc. No. 13 at ¶ 15.)

Noco also sent Waiver Packages to Defendants via electronic means.  Specifically, on October 23, 2020, Noco sent Waiver Packages to Defendants Shenai and Aojie through Amazon Message Center, which allows Amazon users to communicate directly with sellers.  (*Id.* at ¶¶ 18, 19.)  Both messages "appeared to have been instantly relayed and did not bounce back."  (*Id.*)  With regard to Defendant Qingyou, Noco (1) emailed the Waiver Package to this Defendant at the email address listed in its product instruction manual; and (2) delivered the Waiver Package through Facebook Messenger via AUTOWNInternational.  (*Id.* at ¶¶ 16, 17.)  Both messages were relayed "less than a minute later" and did not bounce back.  (*Id.*)

As of December 22, 2020, Noco "had not received any waivers, nor had it received any communications from any of the Defendants."  (*Id*. at ¶ 20.)

On January 12, 2021, Noco filed the instant Motion seeking leave pursuant to Fed. R. Civ. P. 4(f)(3) to serve Defendants Qingyou, Aojie, and Shenai by email and through the messaging centers of Facebook and Amazon.  (Doc. No. 12.)  As these Defendants have not been served, no opposition has been filed.

## II.     Legal Standard

As the Sixth Circuit has noted, the requirement of proper service of process "is not some mindless technicality." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).  *See also Federal Trade Commission v. Repair All PC, LLC*, 2017 WL 2362946 at * 2 (N.D. Ohio May 31, 2017).  Rather, service of a summons and complaint "must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over a defendant." *Federal Trade Commission*, 2017 WL 2362946 at * 2.

Federal Rule of Civil Procedure 4(h) governs international service of process on foreign businesses.  Specifically, this Rule authorizes service of process on a foreign business in the same "manner prescribed by Rule 4(f) for serving an individual, except personal delivery . . ." Fed. R. Civ. P. 4(h)(2).  Rule 4(f) provides, in relevant part, as follows:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> ***
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).[1]

---

[1] Rule 4(f)(2) applies "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt;." Fed. R. Civ. P. 4(f)(2).  Noco does not argue that Rule 4(f)(2) is relevant to the instant motion.

Here, the United States and China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (hereinafter "the Hague Convention"), as referenced in Rule 4(f)(1).  *See Noco Company v. Liu Chang*, 2019 WL 2135665 at * 2 (N.D. Ohio May 15, 2019).[2]  The Hague Convention is a multilateral treaty that was designed to supply a simple way to serve process abroad, assure that foreign defendants receive actual and timely notice of suit, and facilitate proof of service.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988); *Water Splash, Inc. v. Menon,* ---- U.S. -----, 137 S.Ct. 1504, 1507 (2017).  The Hague Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."  Hague Convention, Art. 1.  As the Supreme Court has noted, "[t]his language is mandatory," and compliance with the Hague Convention is required "in all cases in which it applies."  *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699.

"The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries."  *Id*. at 698.  The central authority must attempt to serve the defendant by a method that is compatible with the receiving country's domestic laws, and then provide the applicant with a certificate either confirming that service was successful or listing the reasons that prevented service.  *See* Hague Convention, Articles 2-7.  The Hague Convention also permits certain alternative methods of service (including through postal channels) unless the receiving country objects.  China has objected to most of these alternative methods of service, including service by postal channels.  *See Liu Chang*, 2019 WL 2135665 at * 2.

---

[2] *See also* the Hague Conference website located at https://www.hcch.net.

*See also* China – Central Authority & Practical Information, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=243. As a result, for service in China, the Hague Convention primarily authorizes service through China's central authority (i.e., the Ministry of Justice) that arranges for service according to domestic law. *Id.* Although compliance with the Hague Convention is mandatory in all cases to which it applies, it does not apply "where the address of the person to be served is not known."[3] Hague Convention, Art. 1.

The Sixth Circuit has not directly addressed whether a party must first attempt service through the Hague Convention pursuant to Rule 4(f)(1) before seeking leave to use alternative methods of service under Rule 4(f)(3). Many district courts within this Circuit have concluded that a party need not do so, finding that there is no hierarchy or preference among the methods of service set forth in Rule 4(f). *See, e.g., Phoenix Process Equip. Co. v. Capital Equip. & Trading Co..,* 250 F.Supp.3d 296, 306 (W.D. Ky. 2017); *Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013); *Federal Trade Commission,* 2017 WL 2362946 at * 3; *Slay v. IB Travelin, Inc.,* 2019 WL 572877 at * 2 (W.D. Tenn. Feb. 12, 2019); *Studio A Entertainment, Inc. v. Active Distributors, Inc.,* 2008 WL 162785 at fn 1 (N.D. Ohio Jan. 15, 2008).

Other district courts have expressly disagreed, finding that, if the Hague Convention is applicable, Rule 4(f) requires that parties first attempt service by the means designated in the Convention pursuant to Rule 4(f)(1). *See, e.g., Liu Chang*, 2019 WL 2135665 at * 4-5; *Chanel v. Zhibing*, 2010 WL 1009981 at * 3 (W.D. Tenn. March 17, 2010); *Chanel v. Xu*, 2010 WL 396357 at

---

[3] Additionally, the Hague Convention does not apply if service can be completed without transmitting documents abroad, e.g., if substitute service on a domestic agent of the defendant is valid under local law and completed. Further, in the case of "urgency" the Hague Convention permits courts to enter "provisional or protective measures," which has been interpreted to include "special forms of service." *See* Hague Convention, Art. 15; Notes of Advisory Committee on 1993 Amendment to Rule 4, subdivision (f)(3).

6

* 4 (W.D. Tenn. Jan. 27, 2010).  Still other district courts within the Sixth Circuit have not expressly decided the issue but have noted that the "preferred method for service of a foreign party is service pursuant to the methods authorized by" the Hague Convention.  *See, e.g., Noco Company v. Shenzhen Dika Na'er E-Commerce Co., Ltd.*, 2017 WL 11540638 at * 2 (N.D. Ohio Nov. 22, 2017); *Noco Company v. Shenzhen Anband Technology,* 2018 WL 1373822 at * 2 (N.D. Ohio March 19, 2018); *Midmark Corp. v. Janak Healthcare Private Limited*, 2014 WL 1764704 at * 2-3 (S.D. Ohio May 1, 2014).

As regards Rule 4(f)(3), courts agree that service under that Rule must be (1) directed by the court; and (2) not prohibited by international agreement.  *See e.g., Lexmark Intern., Inc. v. Ink Technologies Printer Supplies, Inc.*, 295 F.R.D. 259 (S.D. Ohio 2013); *Federal Trade Commission*, 2017 WL 2362946 at * 3.  Courts have further found that, before service may be authorized under that Rule, parties may be required to show that they have "reasonably attempted to effectuate service on the defendant, and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Shenzhen Anband Technology*, 2018 WL 1373822 at * 2.  *See also Phoenix Process Equip. Co.*, 250 F.Supp.3d at 306; *Federal Trade Commission*, 2017 WL 2362946 at * 3; *Ahkeo Labs LLC v. Plurimi Investment Managers, LLP*, 2017 WL 2793918 at * 2 (N.D. Ohio June 26, 2017).

Lastly, the Court must ensure that alternative means of service under Rule 4(f)(3) "comport with constitutional notions of due process, namely that the service of process be reasonably calculated, under all the circumstances, to apprize [sic] interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC,* 291 F.R.D. 172, 174 (S.D. Ohio 2013).  *See also Aerodyn Engineering LLC v. Fidia*

7

*Co*., 2020 WL 3000509 at * 1 (E.D. Mich. June 4, 2020); *Federal Trade Comm'n*, 2017 WL 2362946 at * 2.

Rulings on alternative service under Rule 4(f)(3) are discretionary. *See Shenzhen Anband Technology*, 2018 WL 1373822 at * 2; *Federal Trade Commission*, 2017 WL 2362946 at * 3. As one district court noted, "Rule 4(f)(3) empowers the court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case." *Federal Trade Commission*, 2017 WL 2362946 at * 3.

## III.    Analysis

In the instant case, Noco has not attempted to serve Defendants Qingyou, Shenai, or Aojie pursuant to the Hague Convention; i.e., by transmitting the appropriate service documents to China's Central Authority for service according to domestic law. In its Motion, Noco asserts that it should not be required to do so, and that alternative service should be permitted under Rule 4(f)(3), because its attempts to mail Waiver Packages to the Defendants have all failed. (Doc. No. 12.) Specifically, Noco states that mailings to the public physical addresses posted on Amazon for Defendants Shenai and Aojie were returned for incorrect addresses, and that it is unknown whether the alternate physical address for Defendant Aojie is "true and accurate" as it only reflected delivery to a building mailroom. (*Id*.) Noco further argues that its attempted mailing to Defendant Qingyou "entirely failed" due to Qingyou's refusal to accept Plaintiff's Waiver Package. (*Id.*) Lastly, Noco asserts that, under the circumstances presented, service through email and/or third-party messaging centers (such as Amazon and Facebook) are reasonably calculated to give notice and, therefore, comport with due process. (*Id*. at pp. 8-11.)

The Court will address Noco's arguments with respect to each of the three Defendants separately, below.

### A.    Defendant Shenai

For the following reasons, the Court grants Noco's request to serve Defendant Shenai through Amazon's Message Center.  As an initial matter, the Court finds that the Hague Convention does not apply because Defendant Shenai's address is unknown.  Specifically, as set forth *supra*, Noco has presented evidence that (1) Shenai provided a physical address on its SHENAIUS Direct Amazon storefront; (2) Noco mailed a Waiver Package to that address on October 23, 2020 via Fed Ex International Priority; and (3) that Package was not delivered due to "incorrect address."  (Doc. No. 13 at ¶¶ 5, 6, 10, 12; Doc. No. 13-2.)  Noco has further indicated that it did not find any other physical address for Defendant Shenai, despite conducting a "comprehensive and exhaustive search."  (Doc. No. 13 at ¶ 2.)  Based on the above, the Court agrees that Defendant Shenai's address is unknown. Therefore, the Hague Convention does not apply and Rule 4(f)(1) is not applicable.

The Court further finds that, under the circumstances presented, service on Defendant Shenai through Amazon Message Center is appropriate and reasonably calculated to apprise Shenai of the instant lawsuit.  As an initial matter, the Court finds that Noco reasonably attempted to effectuate service by sending the Waiver Package to the physical address provided by Defendant Shenai on its Amazon storefront.  The Court further finds that service through electronic channels (such as email and Amazon Message Center) is not prohibited by the Hague Convention.  *See, e.g., Shenzen Dika Na'er E-Commerce Co., Ltd.*, 2017 WL 11540638 at * 3 (noting that "federal courts have repeatedly found that email service is not prohibited by the Hague Convention"); *Shenzhen Anband Technology*, 2018 WL 1373822 at * 3 (same); *Lexmark Int'l*, 295 F.R.D. at 261 (same).  This is the case even

where a signatory country has objected to the alternative methods of service in Article 10, as China has.  *See Lexmark Int'l*, 295 F.R.D. at 262; *Noco v. Khaustov*, 2019 WL 4218637 at * 3 (N.D. Ohio Sept. 5, 2019) ("[F]ederal courts have found that '[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as email or publication.'") (quoting *Adidas AG v. Adidas.style*, 2018 WL 1801197 at * 1 (S.D. Fla. Feb. 7, 2018)).

Finally, Noco has provided sufficient information from which the Court can determine that the requested alternative service via Amazon Message Center is reasonably calculated to reach Defendant Shenai.  Specifically, Noco has presented evidence that Defendant Shenai sells its AUTOWN jump starter products entirely through Amazon under the seller name "SHENAIUS." (Doc. No. 13 at ¶ 5, 18.)  Noco further asserts that it delivered the Waiver Package to Shenai through Amazon's Message Center (via SHENAIUS) and that it appeared to have been instantly relayed and did not bounce back.  (*Id*. at ¶ 18.)

Courts have authorized electronic service under similar circumstances, particularly where a defendant's business takes place online and the defendant has provided an incomplete or incorrect physical address.  As one district court explained:

> Serving Defendants by e-mail not only meets constitutional standards, but also is the method of service most likely to reach Defendants. Defendants have organized their online business so that the only way customers can contact them to place an order or lodge an inquiry is by e-mail. Although every physical address listed by Defendants proved to be fraudulent upon investigation, every e-mail account listed was active. This is hardly surprising. Any e-commerce merchant depends on electronic communication, and in particular e-mail, for his livelihood. *See Alexandra Jacobs,* Happy Feet: Inside the Online Shopping Utopia, The New Yorker, Sept. 14, 2009, at 67 (noting that most web merchants "seem to be operated by spectral forces rather than human beings" because they handle customer service solely by e-mail). Even "e-business scofflaw[s]," *Rio Props*., 284 F.3d at 1018, must maintain valid e-mail

10

accounts and check them regularly to receive new orders and provide customers with receipts and shipping information.

*Chanel v. Xu*, 2010 WL 396357 at * 4.  *See also Aerodyn*, 2020 WL 3000509 at * 2 ("Plaintiff is also correct in asserting that service via email comports with principles of due process where the serving party has shown, as Plaintiff has done here, that the party being served does business online and the identified emails are valid.")  Moreover, courts have expressly allowed service through Amazon's messaging center under Rule 4(f)(3).  *See, e.g., Noco v. Liu Chang*, 2020 WL 533021 at * 3 (N.D. Ohio Feb. 3, 2020) ("While Amazon's messaging center is not email *per se*, courts have allowed service to Chinese defendants through other electronic messaging services, including through Amazon's messaging center.") (collecting cases).

In light of Noco's good faith efforts to service Defendant Shenai via both physical and electronic means, the Court grants Noco's Motion with respect to this Defendant and orders Noco to serve Defendant Shenai through Amazon Message Center via SHENAIUS within fourteen (14) days of the date of this Order.  Noco shall comply with Fed. R. Civ. P. 4 by providing proof of service once service is completed by the above approved means.  In addition, the Court directs Noco to serve a copy of all pleadings on Defendant Shenai through Amazon's messaging center.  Should Defendant Shenai enter a formal appearance, service shall revert to standard processes.

**B.    Defendants Aojie**

The Court is not persuaded, however, that service by alternative means is appropriate with respect to Defendant Aojie.  Unlike with Defendant Shenai, Noco has not demonstrated that the physical address for Defendants Aojie is unknown.  To the contrary, Noco avers that it was able to obtain a physical address for Defendant Aojie from a business report generated from credit management company, Mira Inform.  (Doc. No. 13 at ¶ 9; Doc. No. 13-3.)  Noco mailed a Waiver

11

Package to this address via Fed Ex International Priority and that package was successfully delivered to the building's mailroom.  (Doc. No. 13 at ¶ 13.)  Thus, by its own admission, Noco has a viable physical address for Defendant Aojie.

Noco asserts, however, that it is "unclear whether [the Waiver Package] ultimately reached Defendant Aojie" because it was accepted by the mailroom and Noco did not receive a response to the Waiver materials.  (Doc. No. 12.)  The Court rejects this argument.  Standing alone, the mere fact that the package was accepted by a mailroom (rather than by Defendant Aojie itself) does not necessarily demonstrate that the physical address is inaccurate.  Moreover, the fact that Aojie has not responded to Noco's waiver request is insufficient evidence that the physical address obtained from Mira Inform for Aojie is inaccurate.  Unlike situations where both parties are located in the United States, foreign defendant Aojie is under no obligation to respond to the waiver request.  *See Liu Chang*, 2019 WL 2135665 at * 4 (citing 4B Charles Alan Wright et al., Federal Practice & Procedure: Civil § 1134 (explaining that, when a foreign defendant chooses not to consent, no obligations are created by the request to waive service)).

Accordingly, the Court finds that Defendant Aojie's physical address is not unknown and Noco has not demonstrated that any other exception to the Hague Convention applies. Therefore, the Court finds that the Hague Convention applies to Defendant Aojie.  The question, then, is whether Noco is required, pursuant to Rule 4(f)(1), to first attempt to serve Defendant Aojie through the means set forth in the Hague Convention before petitioning the Court for alternative service under Rule 4(f)(3).  As discussed above, the Sixth Circuit has not decided this issue and district courts within this Circuit are divided.  *Compare Phoenix Process Equip. Co..,* 250 F.Supp.3d at 306; *Lexmark Int'l Inc.,*

12

295 F.R.D. at 260; *Federal Trade Commission,* 2017 WL 2362946 at * 3 with *Liu Chang*, 2019 WL 2135665 at * 4-5; *Zhibing*, 2010 WL 1009981 at * 3; *Xu*, 2010 WL 396357 at * 4.

For the following reasons, the Court finds that Noco must attempt service on Defendant Aojie pursuant to the procedures set forth in the Hague Convention before seeking alternative service under Rule 4(f)(3).  As noted *supra,* the Hague Convention states that it "**shall** apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."  Hague Convention, Art. 1 (emphasis added).  As the Supreme Court has noted, "[t]his language is mandatory," and compliance with the Hague Convention is required "in all cases in which it applies."  *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699.

Moreover, the Advisory Committee Notes to Rule 4 explicitly recognize the mandatory nature of using the methods of service contained in the Hague Convention when it applies:

> Paragraph (1) gives effect to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which entered into force for the United States on February 10, 1969. See 28 U.S.C.A., Fed. R. Civ. P. 4 (Supp.1986). This Convention is an important means of dealing with problems of service in a foreign country. See generally 1 B. Ristau, International Judicial Assistance §§ 4-1-1 to 4-5-2 (1990). **Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service.** *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity, 50 U.Pitt.L.Rev. 903 (1989). **Therefore, this paragraph provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.**

Fed. R. Civ. P. 4, Adv. Committee Notes (1993 Amendments) (emphasis added).  In light of the above, several district courts have determined that, where the Hague Convention is applicable, Rule 4(f) requires the parties to first attempt service by the means designated in the Convention.  *See, e.g*, *Liu Chang*, 2019 WL 2135665 at * 4-5 (where physical address of defendant was known, "the Hague

Convention procedures are mandatory"); *Zhibing*, 2010 WL 1009981 at * 3 ("If [the Hague Convention applies], Rule 4 requires the parties first to attempt service by the means designated in the Convention."); *Xu*, 2010 WL 396357 at * 4 (same).  *See also Rice v. Electrolux Products*, 2018 WL 4964076 at * 4 (M.D. Pa. Oct. 15, 2018) ("The United States Supreme Court as well as the Advisory Committee to the Federal Rules of Civil Procedure have explained that use of Convention procedures is 'mandatory' if documents must be transmitted abroad to effect service.").[4]

Moreover, Noco has not offered any sound justification for circumventing the Hague Convention procedures in order to serve Defendant Aojie. The Court recognizes the delay this decision may cause and is sympathetic to the potential costs and difficulties of this process.  However, as noted, Noco has not demonstrated that the physical address it obtained from Mira Inform for Defendant Anjoie is incorrect or inaccurate.  To the contrary, Noco's Waiver Package was successfully delivered to that address.  As such, the Hague Convention applies and use of its procedures is mandatory before alternative methods of service may be authorized under Rule 4(f)(3). *See Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699.

Accordingly, Noco's Motion for Alternative Service with respect to Defendant Aojie is denied without prejudice. Noco must instead proceed with service through China's Central Authority pursuant to the dictates of the Hague Convention.  If China does not effect service on Defendant

---

[4] Many of the district courts that have reached the opposite conclusion rely on the Ninth Circuit's decision in *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002).  That decision, however, involved service in a country that was not a member of the Hague Convention (i.e., Costa Rica).  Indeed, in *Rio,* the Ninth Circuit expressly acknowledged that: "A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory." *Rio Properties,* 284 F.3d at fn 4.

Aojie within six months of Noco's request, Noco may file a renewed motion to serve Defendant Aojie by alternative means.

### C.       Defendant Qingyou

For similar reasons, the Court denies Noco's request for alternative service with respect to Defendant Qingyou.  As discussed *supra,* Noco obtained a physical address for Defendant Qingyou in an instruction manual for an infringing product sold by that defendant.  (Doc. No. 13 at ¶ 7.)  Noco does not contend that this address is inaccurate or incomplete.  Rather, Noco argues that alternative service is warranted under Rule 4(f)(3) because the Waiver Package was "refused by recipient."

The Court is not persuaded that Noco may circumvent the mandatory procedures of the Hague Convention because, on one occasion, a mailing sent to Defendant Qingyou was refused.  Indeed, Noco does not direct this Court's attention to any binding authority to that effect.  The fact remains that Noco has not demonstrated that the physical address for Defendant Anjoie is incorrect or inaccurate.  As such, and for all the reasons set forth above, the Hague Convention applies and use of its procedures is mandatory before alternative methods of service may be authorized under Rule 4(f)(3). *See Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699.

Accordingly, Noco's Motion for Alternative Service with respect to Defendant Qingyou is denied without prejudice.  Noco must instead proceed with service through China's Central Authority pursuant to the dictates of the Hague Convention.  If China does not effect service on Defendant Qingyou within six months of Noco's request, Noco may file a renewed motion to serve Defendant Qingyou by alternative means.

**IV.      Conclusion**

For all the reasons set forth above, Plaintiff's Motion for Alternative Service (Doc. No. 12) is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART, as follows.   Plaintiff's Motion for Alternative Service is granted with respect to Defendant Shenai.  Noco is ordered to serve Defendant Shenai through Amazon Message Center via SHENAIUS within fourteen (14) days of the date of this Order.  Noco shall comply with Fed. R. Civ. P. 4 by providing proof of service once service is completed by the above approved means.  In addition, the Court directs Noco to serve a copy of all pleadings on Defendant Shenai through Amazon's messaging center.  Should Defendant Shenai enter a formal appearance, service shall revert to standard processes.

Plaintiff's Motion for Alternative Service is denied with respect to Defendants Aojie and Qingyou.  Noco must instead proceed with service of these Defendants through China's Central Authority pursuant to the dictates of the Hague Convention.  If China does not effect service on Defendants Anjoie and/or Qingyou within six months of Noco's request, Noco may file a renewed motion to serve these Defendants by alternative means.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  January 27, 2021                              U. S. DISTRICT JUDGE

16